UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SAMANTHA MULLIGAN,<br>    Plaintiff,<br><br> v.<br><br>VAIL-SUMMIT ORTHOPAEDICS, P.C.,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION**<br>**NO. 24-40038-DHH** |

**ORDER**

**December 9, 2024**

Hennessy, M.J.

  Before the Court is Defendant, Vail-Summit Orthopaedics, P.C.'s ("Vail-Summit"), motion to dismiss. (Docket #7). Plaintiff, Samantha Mulligan, filed an opposition to the motion to which Defendant replied. (Dockets #16 and 17, respectively). This matter is ripe for adjudication. For the reasons that follow, the motion to dismiss is GRANTED.

I. BACKGROUND

  Defendant is a Colorado-based, orthopedic practice employing over 50 people nationwide. (Docket #1 at ¶ 2). In September 2021, Defendant hired Plaintiff who resided in Massachusetts to begin work on October 11, 2021 as a Remote Surgical Scheduler and Insurance Authorization Coordinator. (Id. at ¶¶ 7, 13). Throughout Plaintiff's employment at Vail-Summit, she worked remotely. (Id. at ¶¶ 14-20). Defendant was aware of Plaintiff's residency in Massachusetts and would mail business materials to her Massachusetts home. (Id. at ¶ 20).

Plaintiff has multiple sclerosis ("MS"), which she is able to control with medication. (Id. at ¶¶ 10-11). Plaintiff's MS symptoms include loss of feeling in both hands, loss of feeling in the bottoms of her feet, severe back pain, issues with mobility in both of her legs, pain, and extreme fatigue. (Id. at ¶ 12). At the time that Defendant offered Plaintiff a remote work position, Plaintiff informed her soon-to-be supervisor, Megan Puppe, of her need to take off time for doctor's visits as a result of her MS. (Id. at ¶ 10). Plaintiff was informed that her need to take time off would not be an issue, so she accepted the position. (Id.).

In March of 2022, five months into her employment at Vail-Summit, Plaintiff informed her supervisor that she was pregnant. (Id. at ¶ 22). Prior to telling her supervisor of her pregnancy, Plaintiff received only positive feedback for her performance. (Id. at ¶ 21). Following her announcement, Plaintiff was met with disparaging remarks and began to receive verbal reprimands from Ms. Puppe for infractions as well as for conduct unattributable to the Plaintiff. (Id. at ¶¶ 22-28). Puppe required Plaintiff to provide doctor's notes for her appointments, even some that were not conducted during business hours, and asked whether the appointments were pregnancy-related. (Id. at ¶¶ 29-30). Following multiple instances of verbal reprimands for infractions unattributable to any wrongdoing by the Plaintiff, on July 14, 2022, Plaintiff received a final written warning from her supervisor for an alleged infraction for which Plaintiff was not responsible. (Id. at ¶¶ 32-35). Plaintiff complained to Vail-Summit's human resources department that previous employees facing the same alleged infraction did not receive written warnings as Plaintiff did; however, Plaintiff was not able to resolve the issue. (Id. at ¶ 36).

In September 2022, Plaintiff requested an application for leave under the Family Medical Leave Act ("FMLA") but waited to submit her application until she was closer to her due date and past her one-year work anniversary as she knew she would only become eligible for FMLA leave

after that date.  (Id. at ¶¶ 40-44).  She also requested information on Defendant's short-term disability policy but information from Defendant via email conflicted with information transmitted orally from Defendant's human resources department.  (Id. at ¶¶ 45-46).  Shortly thereafter, on October 4, 2022, and just one week shy of Plaintiff's one-year work anniversary, Vail-Summit terminated Plaintiff.  (Id. at ¶ 48).  Puppe explained that Plaintiff's termination was for an infraction which was the subject of a written warning seven weeks prior; Plaintiff had not received any warnings or indication of a possible termination prior to being terminated.  (Id. at ¶¶ 49-50).

A week before being terminated, Plaintiff saw that Defendant had posted her position and sought to fill it with a Colorado resident.  (Id. at ¶ 51).  Since being terminated from her position, Plaintiff's MS symptoms have worsened due to Plaintiff' increased stress.  (Id. at ¶ 52).  Instead of her previous monthly injections and a daily pill, Plaintiff now receives an infusion protocol every 4 weeks and has not regained full feeling in her hands.  (Id. at ¶ 53).  She also continues to struggle with mobility.  (Id.).  As a result of experiencing increased stress, Plaintiff's child was induced early.  (Id.).

On January 5, 2023, three months after her termination, Plaintiff filed a complaint against Defendant with the Massachusetts Commission Against Discrimination ("MCAD") asserting claims of disability discrimination, failure to accommodate her disability, and maternity and sex discrimination.  (Id. at ¶ 54).  Plaintiff also sued Defendant in the Worcester County Superior Court, but, on May 15, 2023, the court dismissed her complaint with prejudice for lack of personal jurisdiction over Defendant.  (Id. at ¶ 55; Docket #5 at 9-13).  Plaintiff filed a Notice of Appeal of the decision, but ultimately chose not to pursue it for financial reasons.  (Docket #1 at ¶ 56). Defendant demanded that Plaintiff agree to dismiss her claims with prejudice as to any forum, otherwise they would seek attorney's fees against her for bringing the Superior Court complaint,

but Plaintiff refused. (Id. at ¶¶ 57-58). Subsequently, Defendant filed a motion to recover attorney's fees, but the Superior Court denied the motion on February 8, 2024. (Id. at ¶ 59: Docket #7 at 5).

Plaintiff initiated this action by filing a complaint against the Defendant on March 8, 2024. (Docket #1). On May 17, 2024, Defendant filed a motion to dismiss for the preclusive effects of Plaintiff's state court claim, Plaintiff's lack of receipt of a right to sue letter from the EEOC, this Court's lack of jurisdiction over the Defendant, and Plaintiff's failure to state a claim. (Docket #7).

II.   ANALYSIS

Defendant has moved to dismiss the complaint arguing that this Court lacks subject matter and personal jurisdiction, and the insufficiency of Plaintiff's claims. (Docket #7 at 1-2). The Court must determine the basis of its jurisdiction before addressing the sufficiency of Plaintiff's claims. McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004); see also Fed. R. Civ. P. 12(h)(3). Because the Court finds that it lacks subject matter jurisdiction, it grants the motion to dismiss.

A.   Rooker-Feldman Doctrine

Defendant contends that this Court lacks subject matter jurisdiction over this action under the Rooker-Feldman doctrine because Plaintiff did not file this federal suit until after her state court action alleging the same misconduct was dismissed on the Superior Court's determination that it lacked personal jurisdiction over Defendant. (Docket #7 at 8). As such, Defendant argues that Plaintiff is using this federal action to review and reverse an unfavorable state court decision, in violation of Rooker-Feldman. Id.

When a court considers a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "it must credit the plaintiff's well-pled factual allegations and draw all

4

reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010).  The court may also consider "whatever evidence has been submitted, such as the depositions and exhibits[.]" Id. (quoting Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996)).  Because the court reviews all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor, "[t]he analytical lens through which a court reviews a Rule 12(b)(1) motion is . . . nearly identical to that employed on a Rule 12(b)(6) motion." Municipality of San Sebastian v. Puerto Rico, 89 F. Supp. 3d 266, 273 n.1 (D.P.R. 2015).  The plaintiff has the burden of proving subject-matter jurisdiction.  Id. at 273.  Therefore, "an order granting a motion to dismiss at the pleading stage is appropriate only when the facts adumbrated in the plaintiff's complaint, taken at face value, fail to bring the case within the court's subject-matter jurisdiction." Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017).

"Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction over 'federal complaints . . . [that] essentially invite[] federal courts of first instance to review and reverse unfavorable state-court judgments.'" Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 20 (1st Cir. 2005) (alteration in original) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005)).  The Rooker-Feldman doctrine "applies only when 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" Riley v. Decoulos, 599 F.3d 1, 4 (1st Cir. 2010) (quoting Exxon Mobil Corp., 544 U.S. at 291).

Plaintiff argues that the Rooker-Feldman doctrine does not apply here because the state court dismissed Plaintiff's prior action for lack of personal jurisdiction, which is not an adjudication on the merits pursuant to Mass. R. Civ. P. 41(b)(3).  (Docket #16 at 11); see

5

Bevilacqua v. Rodriguez, 460 Mass. 762, 780 (2011) (an involuntary dismissal "other than a dismissal for lack of jurisdiction . . . operates as an adjudication on the merits"). However, "the application of the Rooker-Feldman doctrine does not turn on the finality, appealability, or preclusive effect of the state court order or judgment, but rather on whether the state court proceeding has 'ended' with respect to the federal issue." Duncan v. O'Shea, No. 2:17-cv-00497-JDL, 2019 U.S. Dist. LEXIS 47706, at *20 (D. Me. March 22, 2019). As explained by the First Circuit, generally court proceedings will have "ended" for purposes of the Rooker-Feldman doctrine in three situations: (1) "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved;" (2) "if the state action has reached a point where neither party seeks further action;" and (3) "if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated." Federación de Maestros de P.R., 410 F.3d at 24-25.

Here, the state action is within the second category of "ended" cases: neither party seeks further action in the Superior Court suit. More than two and a half years ago, the Superior Court determined that it lacked personal jurisdiction over Vail-Summit and dismissed Plaintiff's suit; Plaintiff, though she filed a notice of appeal, chose not to pursue her appeal of that determination; and the time for taking an appeal has lapsed. Id. at 24. Therefore, for purposes of the Rooker-Feldman doctrine, the state court proceeding has ended. See id. at 24 ("if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended."); see also id. at 24 n.10 ("[W]here the lower state court does not issue a judgment but merely an interlocutory order (e.g., a discovery order determining whether certain documents were privileged), and the parties then voluntarily terminate the litigation . . . the state court proceedings have ended, and the Rooker-Feldman doctrine precludes either party from later

challenging the order in federal court."); Duncan, 2019 U.S. Dist. LEXIS 47706, at *21 (holding that court lacked subject-matter jurisdiction under the Rooker-Feldman doctrine over challenge to state court interlocutory discovery order in proceeding which was later voluntarily dismissed without prejudice).  Thus, this court lacks jurisdiction to review the state court's decision that Massachusetts courts lack personal jurisdiction over Defendant.  Therefore, this case is properly dismissed.  See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002) (quotation omitted) ("To hear a case, a court must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees.").

B. Issue Preclusion

However, even if this Court were to reject application of Rooker-Feldman, the principle of collateral estoppel, or issue preclusion, nevertheless would bar this court from considering the question of personal jurisdiction over Defendant.  Issue preclusion "bars the relitigation of any factual or legal issue that was *actually* decided in previous litigation 'between the parties, whether on the same or a different claim."  Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994) (quoting Dennis v. Rhode Island Hosp. Trust, 744 F.2d 893, 899 (1st Cir. 1984)) (emphasis in original).  Issue preclusion requires that "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication was identical to the issue in the current adjudication; and (4) the issue decided in the prior adjudication must have been essential to the earlier judgment."  LaRace v. Wells Fargo Bank, N.A., 99 Mass. App. Ct. 316, 322 (2021) (quotation omitted).

Plaintiff argues that there was no final judgment on the merits in the prior adjudication and therefore issue preclusion does not apply, citing Bevilacqua v. Rodriguez, 460 Mass. 762 (2011),

in support of this position.[1] (Docket #16 at 6-7). Plaintiff's reliance is misplaced, as Bevilacqua actually shows that the Superior Court's personal jurisdiction determination was an adjudication on the merits. In Bevilacqua, the Massachusetts Supreme Judicial Court ("SJC") addressed whether the Land Court properly specified that the plaintiff's case be dismissed with prejudice where the Land Court's dismissal was based on lack of standing and thus want of subject matter jurisdiction. Id. at 779-80. The SJC, citing Mass. R. Civ. P. 41(b)(3), noted that "[a] complaint that is dismissed for lack of jurisdiction is not an adjudication on the merits," and found that it was therefore "inappropriate to attach preclusive effects to the dismissal beyond the matter actually decided – the absence of subject matter jurisdiction." Id. at 780. The SJC stated the obvious rationale for this rule – "a court without subject matter jurisdiction over a controversy is without authority to issue a binding judgment regarding that controversy." Id. Accordingly, the SJC held that "the conclusion that [the plaintiff] lacks standing to bring a try title action is thus binding on him in future actions but dismissal of this action for want of subject matter jurisdiction does not bar him from bringing other actions regarding title to the property." Id.

Likewise, while the Superior Court's dismissal of the action based on a lack of personal jurisdiction was not an adjudication on the merits, the Superior Court's determination that Massachusetts courts did not have personal jurisdiction over Defendant, the matter actually decided by the Superior Court, is binding upon Plaintiff here. Because the Superior Court issued a final decision on the merits on personal jurisdiction and the other prerequisites for the application of issue preclusion are met, the court will not allow the parties to relitigate the issue of personal jurisdiction.

---

[1] Plaintiff does not challenge any of the other elements required for a successful application of issue preclusion.

III.     CONCLUSION

For the foregoing reasons, I hereby ORDER that the motion to dismiss (Docket #7) be GRANTED.

/s/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE